**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**BRADLEY SCOTT HOLLEY,**

     **Plaintiff,**

**vs.**                                              **CIVIL ACTION NO. 3:20-CV-00534**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered August 11, 2020 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 17, 19)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or for remand (ECF No. 17); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 19); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Brandon Scott Holley, (hereinafter referred to as "Claimant"), protectively filed his applications on July 5, 2017 (Tr. at 10, 298-301, 302-309) alleging disability since September 15, 2016 because of muscular dystrophy, depression, and anxiety (Tr. at 13, 319). His claims were initially denied on November 14, 2017 (Tr. at 153-157, 158-162) and again upon reconsideration on March 1, 2018 (Tr. at 178-186, 187-193). Thereafter, Claimant filed a written request for hearing on April 3, 2018 (Tr. at 10, 194-208).

An administrative hearing was held on June 17, 2019 before the Honorable Melissa Hammock, Administrative Law Judge ("ALJ") (Tr. at 38-70). On August 21, 2019, the ALJ entered an unfavorable decision (Tr. at 7-31). On October 16, 2019, Claimant sought review by the Appeals Council of the ALJ's decision (Tr. at 291-294). The ALJ's decision became the final decision of the Commissioner on June 29, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On August 7, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 13, 14) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (ECF No. 17), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 19). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 24 years old as of the alleged onset date and is considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 24) Claimant went as far as the ninth grade in school, and attended special education classes; he tried

to get his GED, but kept failing the math, social studies and English portions; Claimant can write and read "some stuff". (Tr. at 46) Claimant last worked at Gino's Pub in 2015. (Tr. at 47)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this case, the ALJ found Claimant met the insured status requirements through June 30, 2017. (Tr. at 13, Finding No. 1) At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 15, 2016. (Id., Finding No. 2) At the second inquiry, the ALJ found that Claimant had the following severe impairments: Becker's muscular dystrophy; chronic pain syndrome; lumbar radiculopathy; and borderline intellectual functioning. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform medium work except he can:

> occasionally balance, and climb ramps, stairs, ladders, ropes, and scaffolds; frequently stoop, kneel, crouch, and crawl; and perform simple, routine tasks and make simple work-related decisions. He should avoid concentrated exposure to temperature extremes, wetness, humidity, vibration, and hazards.

(Tr. at 18, Finding No. 5) At step four, the ALJ found Claimant has no past relevant work. (Tr. at 24, Finding No. 6) However, in addition to the immateriality of the transferability of job skills, based on Claimant's age, education, work experience, and RFC, the ALJ determined that Claimant is capable of performing other jobs that exist in significant numbers in the national economy. (Id., Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability since September 15, 2016 through the date of the decision. (Tr. at 26, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence because Claimant's mental impairments meet or equal the criteria set forth in Listing 12.05B. (ECF No. 17 at 4-5). Claimant recites numerous diagnoses from the record and asserts this demonstrates he is

incapable of performing substantial gainful activity. (Id. at 5) The ALJ should have accepted the testimony of the vocational expert who opined Claimant is incapable of substantial gainful activity if he were absent more than one and half days a month or off task more than 15% of the workday. (Id.) Claimant asks for reversal with an award for benefits, or for remand. (Id. at 6)

In response, the Commissioner asserts that Claimant was not *per se* disabled under Listing 12.05B, and substantial evidence supported the ALJ's finding that he only had mild to moderate limitations in each of the four broad areas of functioning. (ECF No. 19 at 8-14) Additionally, the Commissioner contends that the ALJ's RFC assessment is supported by substantial evidence and with regard to Claimant's physical and mental impairments, the ALJ examined the relevant records and determined they were not disabling; Claimant fails to prove any greater functional limitations not accounted for in the RFC. (Id. at 15-18) Finally, the Commissioner contends that substantial evidence supported the ALJ's decision and asks this Court to affirm. (Id. at 18)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Mental Health Treatment:

Claimant was not in mental health counseling, but his primary care doctor, Zachary Hansen, M.D., prescribed Celexa and Buspar for anxiety and depression (Tr. at 429, 432-433, 512). Dr. Hansen noted Claimant's mood as okay, stable, and fine on these drugs (Tr. at 429, 432, 626, 650). Dr. Hansen also noted that Claimant reported being "very happy" with the effectiveness of Celexa and Buspar, and that they helped "a lot" with his depression and anxiety (Tr. at 435,

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

636). At these appointments, it was further noted that Claimant had a euthymic mood, was alert and cooperative, and demonstrated unremarkable thought content (Tr. at 430, 433, 436, 447, 451, 457, 465-466, 476, 483, 541, 547, 553, 584, 597, 603, 612, 619).

Psychological Evaluation:

On October 9, 2017, Licensed Psychologist Cherie Zeigler, M.A., evaluated Claimant and made assessments after a clinical interview and mental functional testing (Tr. at 510-514). Claimant drove himself to the appointment and presented himself well with a clean, neat appearance and good personal hygiene (Tr. at 510, 513). He was attentive and cooperative, and he completed all tasks as requested (Tr. at 513). Ms. Zeigler assessed Claimant as fully oriented and having normal speech; slow pace; thought content relevant to conversation; average immediate memory and persistence; mildly deficient remote memory and social functioning; and deficient concentration and recent memory (Id.). She opined that he is capable of managing his own benefits (Tr. at 514). Ms. Zeigler noted that Claimant's scores were consistent with his background of learning problems and low scores on intellectual testing; he obtained a Full-Scale IQ of 69 (Tr. at 513).

Opinions of State Agency Psychologists:

On October 24, 2017, G. David Allen, Ph.D., opined that Claimant had "mild" limitations in the areas of interacting with others and adapting or managing oneself and "moderate" limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace (Tr. at 79). Dr. Allen opined that Claimant could learn simple (one- to three-step) instructions, but should not be asked to do complex problem solving, and that he could do simple, repetitive, routine tasks, but he should avoid activities requiring close attention to detail

8

(Tr. at 83-84). Upon reconsideration on January 22, 2018, Timothy Saar, Ph.D., affirmed Dr. Allen's opinions (Tr. at 107, 112).

<u>Physical Impairment Treatment:</u>

Claimant has progressive muscular dystrophy, and at times, he complained of lower back pain that radiated to his lower extremities (Tr. at 429, 446, 463, 537). Neurontin and Baclofen helped control Claimant's pain (Tr. at 429, 435).

Chest x-rays were largely unremarkable; physical examinations showed that despite lumbar spine tenderness and spasm, Claimant exhibited 5/5 strength throughout, intact sensation, normal lungs, normal cardiovascular function, and no signs of swelling, erythema, or focal neurological deficits (Tr. at 429-437, 446-447, 463-469). He exhibited normal pulmonary function, normal cardiovascular function, normal gait and station, and no signs of swelling or erythema in his lower extremities (Tr. at 522-527, 530-533, 622-628).

In mid-2018 and early 2019, Claimant complained of low back pain and bilateral lower extremity weakness (Tr. at 537, 539-540, 546, 583). However, prior to June 2018, Claimant had not undergone a follow-up exam with pain specialist Pramod Kumar, M.D., in over two years (Tr. at 583). Physical examinations showed tenderness, reduced range of motion of the lumbar spine, and slight weakness (4/5) of the hips and quads (Tr. at 541, 547, 584, 597). However, Claimant also demonstrated normal gait, good balance, normal coordination, 5/5 strength in upper extremities, normal range of motion in upper and lower extremities, normal sensation bilaterally, normal reflexes, normal respiratory function, and normal cardiovascular function. (Tr. at 537-539, 546-549, 552-554, 559-561, 576-577, 583-590, 596-599; 629-631, 636-638, 640-622, 644-647, 650-652). Care providers noted no signs of focal neurological deficits, deformity, swelling,

erythema, tenderness in other areas, motor apraxia, or tremor; and negative Babinski's, Hoffman's, Phalen's, Tinel's, Scarf, Hawkin's, and empty can tests bilaterally (Tr. at 538, 541-542, 547-548, 585, 597-598).

Consultative Examination:

On October 21, 2017, Karen Jewell, A.P.R.N., performed a consultative examination (Tr. at 517-519). Claimant followed commands without difficulty; his recent and remote memory appeared intact (Tr. at 517). He ambulated with a steady gait, and showed the ability to bend, remove socks and shoes from the seated position, and stand on one leg at a time without difficulty (Id.). He also demonstrated 5/5 strength in bilateral upper and lower extremities, full range of motion throughout, normal manipulative functions, intact cranial nerves, normal sensory function, normal reflexes, negative straight leg raising, negative Babinski's signs, and no signs of atrophy, tenderness, or muscle spasm (Tr. at 517-519).

Opinions of State Agency Medical Consultants:

On November 10, 2017, Amy Wirts, M.D., opined that Claimant could perform medium work, except he could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, occasionally balance, and frequently stoop, kneel, crouch, or crawl (Tr. at 93-94). Upon reconsideration on January 22, 2018, Narendra Parikshak, M.D., affirmed Dr. Wirts' opinions (Tr. at 109-111).

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that he lived in an apartment with his wife and stepchild. (Tr. at 44-45) He obtained no other license or certificates other than his driver's license; he admitted that he took the written test for it. (Tr. at 46-47) Claimant testified that he stopped working in 2015 because

"my body and stuff hurt just too much." (Tr. at 47) He had other part-time jobs since then, including cleaning retail stores, such as Sears, but he did not stay at them very long. (Tr. at 47-50) Claimant testified that he was weak and had chronic pain and muscle cramps in his back, legs, feet, arms, and hands (Tr. at 58-63). He alleged difficulty sitting or standing for more than 20 to 30 minutes at one time, walking one city block, lifting more than one gallon of milk, using his hands to perform personal care, and sleeping (Tr. at 59-60).

Claimant also testified that he watches television and will talk to his dog, " 'cause it kinda helps with my depression." (Tr. at 62) He can fix simple meals, perform personal care independently, and socialized with family and friends. (Tr. at 62-63)

Vocational Expert ("VE") Testimony:

In response to the ALJ's hypothetical concerning an individual with Claimant's age, education, work experience, and controlling RFC, *supra*, the VE testified that Claimant could do his past work as a cleaner, categorized as "cleaner industrial" and classified as medium, unskilled work. (Tr. at 67) In addition, the VE opined Claimant would remain capable of performing another medium exertional job such as laundry laborer, a light exertional job such as bakery worker-conveyor line, and the sedentary job such as final assembler optical goods, a desk level job. (Tr. at 68) The VE also testified that employers will only tolerate up to fifteen percent off task of work time and absenteeism a day and a half a month, which includes coming in late and leaving early. (Id.) The VE further opined that if Claimant were to miss five to six days a month on a regular basis, all employment would be precluded. (Tr. at 68-69)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

There are two relevant periods at play in this case:

In terms of his application for DIB, Claimant must show that he became disabled prior to the expiration of his insured status on June 30, 2017. The DIB program provides for payment of disability benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund through Social Security tax on their earnings. 20 C.F.R. §§ 404.110, 404.315. To be entitled to DIB in this case, Claimant bears the burden of showing that he became disabled

prior to June 30, 2017, the date when his insured status expired for the purposes of DIB. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for disability only after his date last insured will not be entitled to DIB benefits. 20 C.F.R. § 404.131(a). See also Jenkins v. Astrue, No. 3:10cv705, 2012 WL 3776370, at *3 n.6 (E.D. Va. Apr. 25, 2012) (citing Matullo v. Bowen, 926 F.2d 240, 246 (3d Cir. 1990)) (explaining that a worsened condition or a new impairment arising after the date last insured cannot be a basis for remand or an award of disability benefits). Therefore, the relevant period for purposes of DIB is from September 15, 2016, the date of Claimant's alleged disability onset, to June 30, 2017 when his insured status expired (Tr. at 11).

In terms of his application for SSI, the relevant period is somewhat longer, from the application filing date of July 5, 2017 through the date of the decision, August 21, 2019. (Tr. at 26); see also, 20 C.F.R. §§ 416.335, 416.340.

Meeting Listing Criteria:

As an initial matter, Claimant merely lists his numerous conditions and ailments found throughout the medical record, and at no time does he specify how these conditions, either singly or in combination, have affected his functioning.[2] Courts within this Circuit have long recognized, however, that a diagnosis or medical condition is not necessarily disabling; there must be a showing of a related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (internal citation omitted). Further, other than his borderline intellectual functioning, Claimant also does

---

[2] Claimant asserts that he suffers from the following: Becker's muscular dystrophy; chronic pain syndrome; lumbar radiculopathy; borderline intellectual functioning; major depressive disorder; generalized anxiety disorder; chronic obstructive pulmonary disease (COPD); allergic rhinitis; and status post left scaphoid fracture. (ECF No. 17 at 5) See, e.g., 20 C.F.R. §§ 404.1521, 416.921 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

not specify which impairment specifically meets or equals any Listing. As noted *supra*, Claimant

bears the burden of proving he has an impairment or combination of impairments that meets or

medically equals the severity of Listing requirements. See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146

n.5 (1987).[3]

>    The Regulations provide:

>    In determining whether your physical or mental impairment or impairments are of
>    a sufficient medical severity that such impairment or impairments could be the basis
>    of eligibility under the law, we will consider the combined effect of all of your
>    impairments without regard to whether any such impairment, if considered
>    separately, would be of sufficient severity.

See 20 C.F.R. §§ 404.1523(c), 416.923(c). When confronted with a combination of impairments,

an adjudicator must not only acknowledge "the existence of the problems, but also the degree of

their severity, and whether, together, they impaired the claimant's ability to engage in substantial

gainful activity." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has

held that the ailments should not be fractionalized and considered in isolation, but considered in

combination to determine the impact on the ability of the claimant to engage in substantial gainful

activity. <u>Id</u>. In short, the ALJ must analyze the cumulative or synergistic effect that the various

impairments have on Claimant's ability to work. <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th

Cir. 1983).

---

[3] The Supreme Court noted:

>    The severity regulation does not change the settled allocation of burdens of proof in disability
>    proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the
>    Secretary is required to bear this burden only if the sequential evaluation process proceeds to the
>    fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe
>    impairment or combination of impairments . . . . If the process ends at step two, the burden of proof
>    never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better
>    position to provide information about his own medical condition, to do so.

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. §§ 404.1525(a), 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, Claimant must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531. Claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

Claimant only offers a conclusory argument that his severe mental impairment meets Listing 12.05B, thus, to that extent Claimant has essentially waived this challenge on appeal. Erline Co. S.A. v. Johnson, 440 F.3d 647, 653 n.7 (4th Cir. 2006) (a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); accord Sedghi v. PatchLink Corp., 440 F. App'x 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue."). Nevertheless, even a cursory review of the ALJ's third step determination demonstrates that she carefully reviewed both the medical and other evidence of record with respect to Claimant's mental impairments, making factual findings which lead to her conclusion that Claimant's impairments did not meet or equal "paragraph B" criteria. (Tr. at 15-18)[4]

As noted by the ALJ, Listing 12.05 has two paragraphs, labeled "A" and "B", and to meet either Listing 12.05A or 12.05B, Claimant must have: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that

---

[4] On judicial review, the Commissioner's factual findings are " 'conclusive' if supported by 'substantial evidence.' " See Biestek v. Berryhill, 139 S.Ct. 1148, 1153 (2019). Given that substantial evidence is "more than a mere scintilla" and "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154 (internal quotation omitted).

demonstrates or supports . . . the conclusion that [Claimant's] disorder began prior to age 22.

(Id.) The ALJ set forth the criteria for Listing 12.05B:

1.  Significantly subaverage general intellectual functioning evidenced by a or b:

    a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2.  Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a.  Understand, remember, or apply information (see 12.00E1); or
    b.  Interact with others (see 12.00E2); or
    c.  Concentrate, persist, or maintain pace (see 12.00E3); or
    d.  Adapt or manage oneself (see 12.00E4); and

3.  The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

(Tr. at 17-18)

While the ALJ accepted that the record included a Full-Scale IQ of 69, and found that the record supported that Claimant experienced deficits in intellectual or adaptive functioning prior to the attainment of age 22, the evidence nonetheless failed to establish deficits in adaptive functioning sufficient to meet Listing 12.05B(2) (Tr. at 18, 396-418, 513). Specifically, the ALJ found the evidence supported no greater than moderate limitations in all four broad areas of functioning (Tr. at 15-16, 18):

The ALJ first reviewed Claimant's abilities in understanding, remembering, or applying

information[5], and explained that the evidence of record showed that Claimant demonstrated unremarkable thought content, normal perception, good insight, a normal ability to communicate, and average immediate memory (Tr. at 15, 20-21, 447, 451, 457, 465-66, 476, 483, 513, 541, 547, 553, 584, 597, 603, 612, 619, 641, 646). The ALJ also noted that Claimant could count change, manage his finances, follow along watching television, drive, read, write, help with household chores, prepare simple meals, and perform personal care independently (Tr. at 15, 22, 46, 62-63, 318, 349, 511-514). In addition, Drs. Allen and Saar found Claimant moderately limited in this area, and that Claimant retained the ability to learn simple (one- to three-step) instructions, but he should not be asked to perform complex problem solving; significantly, the ALJ found these opinions persuasive. (Tr. at 23, 79, 83, 107, 112) Accordingly, the ALJ determined Claimant had only a moderate limitation in this area of functioning.

Next, in interacting with others[6], the ALJ noted that Claimant reported that he lived with family, socialized with family and friends, shopped in stores monthly, and got along well with family, friends, neighbors, and authority figures (Tr. at 16, 22, 63, 338, 340, 365, 512, 514). The ALJ also pointed out that at his appointments, providers noted that Claimant was cooperative, had a mostly neutral mood, an appropriate affect, and demonstrated a normal ability to communicate (Tr. at 16, 20-22, 447, 451, 452, 456, 466, 476, 541, 547, 583-584, 597, 641, 646). The ALJ observed that these findings were shared by Drs. Allen and Saar as well as Ms. Zeigler, who opined Claimant was only mildly limited in this area of functioning (Tr. at 16, 20-21, 23, 79, 107, 513). Thus, the ALJ found Claimant had a mild limitation in this area.

---

[5] This refers to the abilities to learn, recall, and use information. See Listing 12.00E(1).
[6] This ability includes cooperating with others, maintaining conversations, understanding and responding to social cues, and keeping interactions free of excessive irritability and argumentativeness. See Listing 12.00E(2).

With regard to concentrating, persisting, and maintaining pace,[7] the ALJ discussed Claimant's activities which demonstrated an ability to focus and pay attention: that he could count change, manage his finances, follow along watching television, drive, read, write, help with household chores, prepare simple meals, and perform personal care independently (Tr. at 16, 22, 46, 62-63, 318, 349, 511-514). The ALJ also discussed the objective medical evidence showing Claimant was alert and exhibited unremarkable thought content, normal perceptions, and normal persistence (Tr. at 16, 21, 23, 430, 433, 436, 447, 451, 465, 513, 553). Again, these observations were shared by Ms. Zeigler as well as the state agency psychological consultants, who opined that Claimant was only moderately limited in this area (Tr. at 20-21, 23, 79, 84, 107, 112, 510, 513). From this evidence, the ALJ determined Claimant was moderately impaired in this area of functioning.

Finally, with regard to Claimant's ability in adapting and managing oneself,[8] the ALJ again noted the same evidence set forth *supra*, observing that he was capable of performing his own personal care independently, taking out the trash every other day, driving a car, counting change, managing his finances, and preparing simple meals (Tr. at 16, 22, 46, 62-63, 318, 349, 511-514). The ALJ again recognized the observations made by Claimant's providers during examinations: that Claimant was alert, oriented, appropriately dressed and groomed, and in no acute distress throughout the period at issue; and that he demonstrated neutral mood, appropriate affect, normal perception, and good insight (Tr. at 16, 21, 23, 430, 433, 436, 447, 451, 465, 513, 553). Again, the state agency psychological consultants opined that Claimant was only mildly

---

[7] This refers to the abilities to focus attention on work activities and stay on task at a sustained rate. See Listing 12.00E(3).
[8] This includes regulating emotions, controlling behavior, and maintaining proper hygiene and attire. See Listing 12.00E(4).

limited in this area (Tr. at 20-21, 23, 79, 107). Accordingly, the ALJ found Claimant had only a mild limitation in this area of functioning.

Because Claimant had no more than moderate functional limitations as a result from his mental impairment, he failed to meet his step three burden. In short, the undersigned **FINDS** that the ALJ's step three findings and conclusion that Claimant's mental impairment did not satisfy Listing 12.05B criteria is supported by substantial evidence.

The RFC Assessment and Hypothetical Questions to the Vocational Expert:

Claimant also asserts, without identifying any specific evidence, that "[i]t is obvious" that his "impairments preclude employment at any exertional level." (ECF No. 17 at 5)

A claimant's RFC represents the *most* that the individual can do despite her limitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. Id. §§ 404.1546(c), 416.946(c).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted); see also Felton-Miller, 459 F. at 231.

To the extent that Claimant is arguing that the RFC assessment is not supported by

substantial evidence, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)). Instead, an ALJ " 'must build an accurate and logical bridge from the evidence to his conclusion.' " Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). In this case, the ALJ provided a comprehensive review of the evidence, which included Claimant's testimony and subjective statements, his activities of daily living, the objective medical findings, his treatment history, and the medical opinion evidence (Tr. at 18-23); the ALJ also explicitly stated the RFC assessment:

> is supported by the objective medical evidence contained in the record. The claimant's allegations are weakened by inconsistencies between his allegations, his statements regarding daily activities, and the medical evidence. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless, the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. The claimant does experience some limitations but only to the extent described in the [RFC] above.

(Tr. at 23)

As noted *supra*, although Claimant summarily contends his numerous conditions preclude all employment, he merely lists the various diagnoses throughout the record without any specific identification as to a related functional loss. See Gross, *supra*. Regardless, the ALJ accommodated Claimant's credibly established limitations resulting from his impairments in the hypotheticals to the vocational expert by restricting him as provided in the controlling RFC. (Tr. at 24-25)

In light of Claimant's argument that the ALJ "should have accepted the testimony of the Vocational Expert who stated that [Claimant] would not be retained by an employer if he was absent from work more than 1.5 days a month or was off-task more than 15% during the normal

workday" (ECF No. 17 at 5, citing Tr. at 68-69), it is noted that this Circuit has long since held that hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As stated above, the reconciliation of conflicting evidence was for the ALJ to resolve, not this Court. See SSR 96-8p, 1996 WL 3741784, at *7. Claimant points to no evidentiary support that suggests he would be absent from work more than a day and a half a month, or that he would be off task more than fifteen percent of the workday. In any event, pursuant to the pertinent legal authority, the ALJ was not obligated to accept this portion of the VE's testimony; the ALJ determined based on the overall evidence of record, the combined effect of Claimant's impairments simply did not preclude all employment. Accordingly, the undersigned **FINDS** that the VE's responses to the ALJ's controlling hypothetical question were supported by substantial evidence, and further **FINDS** that the ALJ did not err by not adopting assumed limitations that were not supported by the record.

Although Claimant advocates for an alternate decision, as already stated herein, such are matters necessarily involving the resolution of conflicts in the evidence of record, and are evidentiary findings within the purview of the ALJ. In short, though Claimant may disagree with the ALJ's determination that he could perform medium exertional work with certain non-exertional limitations, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7. The ALJ's narrative of the record included the objective medical evidence and the other evidence of record, including Claimant's own statements and testimony, provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780

F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at [her] conclusions" therefore remand is not necessary. Mascio, 780 F.3d at 637. Accordingly, the undersigned **FINDS** that the ALJ's RFC assessment as well as the controlling hypothetical questions to the vocational expert were based upon substantial evidence.

Finally, the undersigned further **FINDS** that the ALJ's analysis of the evidence of record, and the final decision denying Claimant's applications for benefits are also supported by the substantial evidence.

**<u>Recommendations for Disposition</u>**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 17), **GRANT** the Defendant's request to affirm the decision below (ECF No. 19), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 21, 2021.



Omar J. Aboulhosn
United States Magistrate Judge